**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JARROD D. WILLIAMS, ET AL.** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 4:25-CV-574-P** |
| | § | |
| | § | |
| **CITY OF FORT WORTH, ET AL.,** | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING THE CITY
OF FORT WORTH AND THE INDIVIDUAL DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT AND THE COURT'S SUBJECT MATTER
JURISDICTION**

Pending before the Court are the following five motions to dismiss: (1) one filed by Defendant City of Fort Worth (hereinafter referred to as "the City") [doc. 28] on September 3, 2025; (2) one filed by seven individual Defendants[1] who are licensed police officers employed by the City (hereinafter referred to as the "Seven Individual Officer Defendants' Motion to Dismiss") [doc. 49] on September 29, 2025; (3) one filed by five individual Defendants[2] who are licensed police officers employed by the City [doc. 51] on October 3, 2025; (4) one filed by six individual Defendants[3] who are licensed police officers employed by the City [doc. 55] on October 6, 2025; and (5) one filed by Defendant Neil Noakes ("Chief Noakes") [doc. 57], former Chief of the City of Fort Worth Police Department, also on October 6, 2025. Having carefully considered the

---

[1] These seven individual Defendants (with their badge numbers) are: (1) Sterling Rochester (#4314); (2) Kristopher Donahey (#3807); (3) Jake Montgomery ("Montgomery") (#4891); (4) Shawn Evans (#4512); (5) Kevin Blasingame (#4343); (6) Christopher Cardona (#4880); and (7) Carlos Guardado (#4687). The Court notes that Plaintiff, in his Amended Complaint, states that Montgomery's badge number is 4897 (instead of 4891).

[2] These five individual Defendants (with their badge numbers) are: (1) Joseph Smith (#4806); (2) Nadine Bauman (#4818), incorrectly named by Plaintiffs as Nadine Dauman; (3) Joselin Frias (#4664); (4) Joel Perez (#4778); and (5) Darrin Parr ("Parr") (#3477).

[3] These six individual Defendants (with their badge numbers) are: (1) Sergeant Joe Pittman ("Pittman") (#3611); (2) Douglas Cavanaugh (#4513); (3) John Garcia (#4666); (4) Brandon Roth (4761); (5) David Barber (#4875); and (6) Julian Garcia (#4937) (incorrectly named by Plaintiffs as Julian Garcie).

1

motions, responses, replies, and Plaintiffs' Amended Complaint, the Court **RECOMMENDS** that the case be dismissed for lack of subject matter jurisdiction.

On May 30, 2025, *pro se* Plaintiff Jarrod D. Williams ("Williams"),[4] on behalf of himself and his two minor children, filed suit against the City, Chief Noakes, and the eighteen above-listed individual police officer defendants (hereinafter collectively referred to as the "Individual Officer Defendants"). Plaintiffs sue Chief Noakes and the Individual Officer Defendants in their "private and public capacities [sic]." (*Id.* at 1-2.) In Plaintiffs' Amended Complaint [doc. 22] filed on August 18, 2025, which is the live pleading before the Court, Plaintiffs allege that this suit arises out a series of incidents that occurred at Plaintiffs' home in Fort Worth, Texas, on July 8, 2023. (*See generally* Plaintiffs' Amended Complaint ("Pls.' Am. Compl.") at 2-7.) Plaintiffs state that they are "seeking damages from Defendants for acts or omissions that violated the rights protected by the Constitution for the [U]nited [S]tates of America, Texas' Constitution, equity, and Texas common law." (*Id.* at 1.)

Williams claims that he was ultimately arrested at approximately 10:00 p.m. that evening "after the FWPD S.W.A.T. forced entry into the home and flipped over most of the items in the house, damaging almost everything in the house." (*Id.* at 3.) The only Individual Officer Defendants that Williams references by name throughout the "Statement of Facts" in his Amended Complaint are Pittman and Parr. All the other seventeen Individual Officer Defendants are referred to generically as, *inter alia*, "Officers" or "FWPD officers" (*Id.* at 2-7.) Plaintiffs claim that the Individual Officer Defendants engaged in a multitude of unlawful acts while on his property, including claims of official misconduct, conspiracy, due process violations, conversion, attempted assault, assault, battery, false arrest, malicious arrest, false imprisonment, falsifying records,

---

[4] While this suit is brought by Williams and two other Plaintiffs, these other Plaintiffs are Williams' minor children. Thus, the Court will reference Williams as Plaintiff or Plaintiffs interchangeably.

kidnapping, destruction of property, intentional infliction of emotional distress, intrusion upon seclusion, prior restraint, abuse of power, burglary, joint trespass, negligence, malfeasance, unlawful trespass, and cruel and unusual punishment for turning off Plaintiffs' water for hours. (Pls.' Am. Compl. at 2-6.)  As to the City and Chief Noakes, Plaintiffs allege:

> The City of Fort Worth and it's chief of police are responsible for the actions of its agents under the Doctrine of Respondeat Superior and the principle of vicarious liability.  The customs, standards and lack of training are some of the reasons they are liable under these set of rules.  Officers should have known that by performing a knock and talk, and not getting a response from Affiant, that their license to be on Plaintiff's private property were relinquished and that they needed a warrant to perform any other actions on Plaintiff's private property.

(Pls.' Am. Compl. at 7 (mistakes in original).)

In all the above-referenced motions to dismiss, Defendants raise a multitude of reasons why the claims against them should be dismissed.  In his response to such motions, Williams repeatedly denies that he is bringing any claims under Section 1983, and, instead, as set forth in his Civil Cover Sheet, is bringing this suit for breach of contract or breach of trust.  For example, in his response to the City's Motion to Dismiss, Williams states:

> Plaintiffs has notified this Court that this action is not a 42 U.S.C. 1983 action.  The City's Motion metioned 42 U.S.C. 1983 several times and Plaintiffs made it clear that they were bringing this suit for breach of contract, and breach of trust, common law, equity and constitutional violations.  On Plaintiff's Civil Cover Sheet,[5] Plaintiffs made it clear that they were not suing any federal statutes and were only using the law stated therein.  This lawsuit is an attempt to sue police officers official bonds, for breach of contract, breach of trust, and constitutional violations among other things.  42 U.S.C. 1983 was written to protect newly emacipated negros against the KKK, state and local governments.  This action is a common law tort action, and is suit against the official bonds of the Defendants.  It a public suit against the bonds and a private suit to each official separately.
>
> Plaintiffs have written The City, and have done open records request, to get the of the insurer who has the indemnity bonds for the Defendants, but The City has refused to give those names to me. . . .

---

[5] On Plaintiffs' Civil Cover Sheet [doc. 1, p. 9], Plaintiffs, under "Nature of Suit" only checked the box for "Other Contract."  (Plaintiffs' Civil Cover Sheet [doc. 1, p. 9]).  In the "Cause of Action" section of the Civil Cover Sheet, Plaintiff further indicated that "Breach of Contract/Breach of Trust" was a "brief description of cause."  (*Id.*)

. . . Plaintiffs are not bringing this action under 42 U.S.C. 1983, so all references of that statute should not be consider as the law of this action. This suit is mainly an action against indemnity bonds. All officers swear an oath to the constitution of the state and of the united states of America. That oath is backed by an insured indemnity bond. This suit is mainly a suit against those bonds. In Texas the Government Code, Title 6, Subtitle A., Chapter 604 is the section of that statute states that public officers and employess have to have file an official bond with their oath.

In Forth Worth Code of Ethics and General Orders, the last paragraph states, "I recognize the badge of my office as a symbol of public faith, and accept it as a public trust to be held so long as I ma true to the ethics of the police service." Public officials are trustees as the code of ethics state that it is a public trust. We the People are the beneficiaries of that trust. This action is also a breach of trust lawsuit.

(Plaintiffs' Response to City of Fort Worth's Motion to Dismiss ("Pls' Resp. to City's Mot. to Dismiss") [doc. 42] at 1-2 (mistakes in original) (footnote inserted).)

Moreover, in Williams' Response to the Seven Individual Officer Defendants' Motion to Dismiss, Williams, *inter alia*, states:

. . . This suit is mainily against the oaths and bonds of all the Defendants named in the complaint. A bond is simply a promise to perform or a promise to pay. Since the officers didn't perform their duties correctly they have a bond in place to indemnify them in these proceedings. The admilstrative code in Texas, under Title 37, Part 7 requires all licensed and appointed peace officers to obtain a surety bond. The government code of Texas in Chapter 604 outlines general official bond requirements for public officers. . . .

. . . .

Defendants may not understand that Plaintiff's have a remedy under contract law. Plaintiff's understand that most lawsuits against police officers are under 42 U.S.C § 1983. This suit is mostly against the bonds and sureties of the mentioned police officers. Plaintiff's are purposefully suing the bonds and not under section 1983. . . . Most of the principles that the Defendants are using are not applicable under contract principles. All Defendant's named in the Amended Complaint, except Neil Noakes violated contract, trust, common law, and equity. . . .

4

(Plaintiffs' Response to the Seven Individual Defendants' Motion to Dismiss [doc. 53] at 1-2

(mistakes in original).)  Furthermore, in Plaintiffs' Response to the other three motions to dismiss

[docs. 51, 55, 57], Williams, *inter alia*, avers:

> 3. . . . Since part of Plaintiff's claims is mainly for breach of contract and breach of trust, Texas allows for four year to bring a suit for that claim, which is located in Chapter 16.004 of the Texas civil practice and remedies code . . . .
>
> . . . .
>
> 7. . . . This case is dealing with an indemnity bond by an insurance company and the ability of when people can make claims on them.  It also deals with the pricipal of the law of agency.
>
> . . . .
>
> 13. Once again, Plaintiffs remind the Defendant's that this is a suit mainly against the sureties and bonds of all defendants.  All defendants have an oath and official bond, and those bonds have at least two sureties who will indemnify each officer.  Though Plaintiffs may bring up the Texas Constitution and the common law theories that the Defendants mentioned, Plaintiffs remind the defendants that this suit is mainly for breach of trust and breach of contract of the constitutions, that the officers swore an oath to and that they are bonded by.  So Plaintiffs are using the common law, the constitutions and the case law to prove violations, but Plaintiffs know most of the monies that will be discharged them will be from their sureties who indemnifies police officers.  Defendants are reminded of the principle that CONTRACT MAKES THE LAW.  These officers have oaths and bonds, which are contracts, that Plaintiffs will put into the record that will show that they violated their contractual obligations, and that their sureties will indemnify them for these violations.
>
> . . . .
>
> 28. This is not a 42 U.S.C. § 1983 lawsuit, also known as the Ku Klux Klan Act, which was officially written to protect newly freed slaves.  Defendants continues to use citations to reference this code, which this suit is not is not under the code.  This is a suit against the oaths and bonds of the City and police officers, which are contracts.

(Plaintiffs' "Response to Defendants Certain Defendants Motion to Dismiss" [doc. 67] at 2-8

(mistakes in original) (emphasis in original).)

"Federal courts are courts of limited jurisdiction." *Peoples Nat'l Bank v. Off. of the Comptroller of the Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). "As courts created by statute, they have no jurisdiction absent jurisdiction conferred  by statute." *Id*. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The general rule is that a federal court obtains jurisdiction over subject matter only if the elements necessary to constitute diversity of citizenship are met under 28 U.S.C. § 1332 or if the cause of action arises under the Constitution, laws, or treaties of the United States under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1331, 1332. Absent jurisdiction conferred by statute or the Constitution, federal courts lack power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *See Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

As diversity of citizenship is not alleged, the Court will only have subject matter jurisdiction to hear this case if it has federal question jurisdiction. Plaintiffs, in their Amended Complaint, make multiple references to the United States Constitution and protected rights under such Constitution. (*See generally* Pls.' Am. Compl.) However, Plaintiffs, in responding to the various motions to dismiss, unequivocally and clearly state that they are **not** bringing this action under 42 U.S.C. § 1983. (*See* pp. 3-5, *supra*.) Instead, Plaintiffs repeatedly state that this is a breach of contract case and an action against indemnity bonds. (*Id*.)

While Section 1983 is not itself a source of substantive rights, it provides a private right of action against parties that, acting under color of law, deprive a person of rights secured by the United States Constitution or federal law. *See Carney v. New Orleans City*, 468 F. Supp. 3d 751, 761 (E.D. La. 2020). Based on the allegations in this case, Section 1983 is the only available mechanism in which Plaintiffs could seek relief for any constitutional or federal violations as there

is no federal general common law that would otherwise allow Plaintiffs to sue for relief. *See Rodriguez v. Fed. Deposit Ins. Corp*, 589 U.S. 132, 136 (2020) ("As this Court has put it, there is 'no federal general common law.'") (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1838)). While the Court has an obligation to liberally construe Plaintiffs' complaint,[6] the Court also must take Williams at his word when he unequivocally, clearly, and repeatedly states that he is not bringing this action under Section 1983.[7] *See Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983) (explaining that, when a district court is considering a motion to dismiss in a case filed by a *pro se* plaintiff, the court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those material subsequently filed"); *Nicolais v. Cheramie*, No. 23-7094, 2024 WL 4113752, at *3 n.6 (E.D. La. Aug. 12, 2024) ("[W]hen ruling on the defendants' motions to dismiss, the Court should consider any additional allegations in [the *pro se* Plaintiff's] oppositions that embellish the original complaint's averments.")  Based on Plaintiffs' Amended Complaint in conjunction with Plaintiffs' additional statements in their responses to the motions to dismiss, it is clear that Plaintiffs are intending to only bring state-law claims against Defendants. Consequently, as there is no federal question, this Court does not have subject matter jurisdiction to hear Plaintiffs' claims.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has

---

[6] *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[7] In other words, this is not a case where it is unclear what Plaintiffs are intending in his Complaint as Plaintiffs, in their responses, have clearly stated they are not bringing this action under Section 1983.

been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 6, 2026,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 20, 2026.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

8